# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **ROSE MARY WILLIAMS** | **CIVIL ACTION NO. 05-1895** |
| **VS.** | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED.**

*Background*

Born on February 7, 1954, Rose Mary Williams is a 52-year old claimant with a seventh-grade education. (Tr. 14). Williams has worked in the past as a housekeeper. (Id.).

Williams filed an application for supplemental security income payments on February 19, 2004, alleging disability as of March 1, 1999 due to muscoskeletal pain, poor vision, Alzheimer's, and mental problems. (Id.). Williams's application was denied initially and on reconsideration. In a decision dated July 13, 2005, an ALJ determined that Williams is not disabled because she has the residual functional capacity to perform a significant range of light work. (Tr. 21). The Appeals Council denied a request for review on September 21, 2005, (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner from which Williams now appeals.

## *Standard of Review*

This court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not re-weigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Id.

## *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience,

and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that Williams suffers from the severe impairments of muscoskeletal pain as a result of osteoarthritis and decreased vision, but that she retains the residual functional capacity to perform a significant range of light work, including the jobs of janitor/maid, cashier, and farm worker. (Tr. 21-22).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

### *Assignments of Error*

Williams alleges on appeal that the ALJ erred in finding that she is not disabled.

After a review of the entire record and the briefs of the parties, the undersigned concludes that the ALJ's decision is supported by substantial evidence in the record.

### I.  **Medical History**

The medical records documenting Williams's allegations are scant. On March 27, 2004, Williams was examined by Dr. Chukwuma Eze, a nephrologist, for complaints of Alzheimer's, mental problems, headaches, hearing and vision problems, arthritis, and pain in her right hand, shoulder, knees, neck, and back. (Tr. 141). Dr. Eze reported that Williams ambulated well and without any difficulty. (Tr. 142). Dr. Eze noted that, although Williams reported that she could not get on and off the examination table without assistance, she did not appear to be in any form of distress. (Id.). Furthermore, Williams's vision was 20/70 without glasses. Dr. Eze reported that Williams had no point tenderness, clubbing, cyanosis, or edema. Williams had normal grip strengths, no atrophy or deformity, and no swelling of her joints. (Id.). Williams's lumbar spine range of motion was approximately 60 degrees, as were her straight leg raises. (Id.).

Dr. Eze reported that, despite her allegations of hearing difficulty, Williams was "completely capable of hearing normal voices at normal distances." (Tr. 143). Furthermore, Dr. Eze reported that he "did not find any objective evidence to support [Williams's] allegations."

On March 31, 2004, Williams was examined by Dr. Charles S. Monier, an internist, for chest pain. All diagnostic testing, including an EKG, was within normal limits. Williams's heart had a regular rate and rhythm, without murmurs, gallops, or rubs, and she had full and equal pulses. (Tr. 131). Dr. Monier reported that Williams suffered from chest pain "which certainly seems musculoskeletal in origin." She was also diagnosed with tobacco abuse and was discharged. (Tr. 131-32).

On April 12, 2004, Williams was examined by Dr. Alfred E. Buxton, a clinical psychologist. Dr. Buxton reported that Williams has fair social skills; even pace with regular rate of performance; normative response latency; slightly sub-average intellect; and clear and cogent cognititions. (Tr. 145). Dr. Buxton reported that Williams's recent and remote memories, judgment, reasoning, insight, and reflective cognition could not be evaluated, because of her failure to be truthful during the examination. For example, Dr. Buxton noted that Williams denied knowing her age; date of birth; how far she went in school; the ages of her children; how may grandchildren she has; whether a cat is larger than a rat; the shape of a basketball; and whether the sun shines during the day or at night. Williams also alleged that she cannot tell time. (Tr. 144-45). Dr. Buxton also noted that, although Williams alleges that she cannot see, she obtained a drivers license in 2002 with no vision restrictions. (Tr. 145). Dr. Buxton reported the following:

> It is quite clear that she possesses fairly good intelligence. There is no evidence of any psychiatric overlay with her. However, she presents in a bogus and otherwise

> fake bad fashion and denies a knowledge base that certainly she should possess while being able to recall events that if one actually had memory difficulties one would not recall. . .. She may be a poorly educated individual of subaverage intellect but certainly not as impaired as she attempts to present herself on this occasion. In fact, this examiner is of the opinion that she functions much higher than she is willing to demonstrate on examination. She is regarded as being at least marginally competent as a manager of her own personal affairs. There is no evidence of any severe psychiatric overly. . . .Unless there is something offered from a treating medical professional regarding her health status then there is nothing presented from a psychological perspective on this occasion which would preclude this individual from securing and maintaining gainful competitive employment within the general community at large commensurate with her functional capabilities.

(Tr. 145-46).

## II.  **ALJ's Finding of Non-Disability**

Williams contends that the ALJ erred in finding that she is not disabled. In so finding, the ALJ concluded that Williams can lift and carry 10-20 lbs. on a regular basis; walk and/or stand for 6 hours in an 8-hour workday; but does have some limitations of her grip strength in her dominant upper extremity that would place some restrictions on her ability to use that upper extremity. Based upon the foregoing, the ALJ concluded that Williams retains the RFC to perform a significant range of light work activity. (Tr. 19).

With this RFC assessment in place, the ALJ questioned a vocational expert at Williams's administrative hearing, who testified that, although Williams cannot return to her past work as a housekeeper because of the limitations on her ability to reach forward and overheard with her upper extremity, Williams is capable of working as a janitor, cashier, and farm worker. (Tr. 22).

The undersigned concludes that the testimony of the vocational expert is consistent with the evidence in the record. With regard to her hearing, Dr. Eze reported that Williams is "completely capable of hearing normal voices at normal distances." (Tr. 143). With regard to

her vision, Dr. Eze reported that Williams's vision is 20/70 without glasses. (Tr. 142). Furthermore, Dr. Buxton reported that Williams received a driver's license in 2002 that contained no vision restrictions. (Tr. 145). Williams has never been diagnosed with Alzheimer's, and Dr. Buxton reported that she has no psychological impairments.

Considering the foregoing, the undersigned concludes that the ALJ's finding of non-disability is supported by substantial evidence, and that Williams's claims have no merit.

**2.     Complaints of Pain and Credibility**

In concluding that Williams's claims have no merit, the ALJ clearly found that Williams's credibility was extremely suspect, based on numerous inaccurate statements she made in her disability application, her testimony at her administrative hearing, and her characterization of her impairments to Dr. Buxton. The undersigned concludes that the ALJ's finding regarding Williams's credibility is well-founded.

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. Francois v. Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). As to a determination of whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. Francois, 2001 WL 322194, at *11. Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical

signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." Carrier, 944 F.2d at 246. This court may not reweigh the evidence. Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

After review of the record, the undersigned concludes that substantial evidence supports the ALJ's findings regarding Williams's credibility. The record shows that Williams has not sought regular medical treatment for her impairments. Such failure to seek treatment belies complaints of disabling pain. Furthermore, the record shows that Williams has made numerous inaccurate and/or untruthful statements in her disability application materials. For example, Williams has had particular trouble identifying her educational level. Williams has at different times represented that she has had *no* formal education; that she finished third grade; fourth grade; seventh grade; ninth grade; and tenth grade. The ALJ found that Williams was attempting to lower her educational background in an effort to appear less intelligent than she is for purposes of secondary gain. Dr. Buxton similarly found that Williams presented herself in a "bogus and fake bad fashion" for the purpose of appearing to be more impaired than she truly is.

For the foregoing reasons, the undersigned concludes that the ALJ's finding regarding Williams's credibility is well-founded.

*Conclusion*

Considering the foregoing, the Commissioner's decision is **AFFIRMED**.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).  See <u>Richard v. Sullivan</u>, 955 F.2d 354 (5th Cir. 1992) and <u>Shalala v. Schaefer</u>, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on November 22, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)